*472
 
 Ruffin, C. J.
 

 If the plaintiffs had merits, the bill is so imperfectly framed, that the Court could not afford them the relief they ask, or any part of it. The supposed testator, Asa Edney, (for neither his death nor ■will are stated in the bill,) purchased from the defendant King, the administrator of William Mills, a negro belonging to the estate and gave his bond for the price : and the plaintiffs in this suit seek to be relieved from paying it. On what ground they consider themselves entitled to the relief, it is not easy to say upon their bill. It may be supposed, perhaps, that Asa Edney is entitled to a part of the estate of the intestate, William Mills, and we conjecture that it was intended so to state in the bill. But there is no such statement in it. The bill begins by shewing, that the intestate died, “ leaving seven children but who they were, or that Asa Edney was one of them, no where appears. From the difference in the names, the presumption is, that Asa Edney was not one of the seven children. Then, it may be, that he married a daughter of the intestate, and that is probably the truth, and we would so presume, if the Court could proceed to determine rights upon such loose guesses. But that cannot be done ; and,
 
 therefore,
 
 every person, who claims to recover either at law or in equity, must shew a title in the pleadings, and that ought to be done by distinct averments or plain affirmative statements. It cannot be assumed, that Asa Edney was one of the intestate’s seven children, or entitled in right of one of those children, or otherwise, to a share of his estate ; since there is no such allegation in the bill. It is true, that the bill is entitled “the bill of complaint of Ambrose J, Edney, executor of Asa Edney deceased, and of Samuel J. Edney against Elisha King, administrator of William Mills deceased, and Marvell Mills, P. Myers, William S. Mills, George Mills, Louisa Camp, John Camp, John Dillen, Winsom Edney, Sarah Edney, William J. Lewis, (and upwards of twenty other persons of different names,) heirs
 
 *473
 
 at law and legal representatives, of William Mills deceased.” But that in no degree helps the plaintiff’s case. For, in the first place, the title of a bill is no part of it. It is merely a mode of conveniently denominating a bill or cause, and it cannot be deemed .a part of the statements of the bill, either as to the title or the parties. But if it were otherwise, still no title would appear in Asa Edney, because the persons, named in the title of the bill as defendants, are called “ heirs at law and legal representatives of William Mills deceased,” thus excluding Asa Edney from that character. Moreover, instead of seven next of kin, there are here upwards of thirty named as such. The bill, therefore, clearly could not be maintained for any purpose, as this objection goes to the whole foundation of the plaintiff’s equity. For it does not appear to what share Asa Edney was entitled, nor, with any certainty, that he was entitled to any, and if he was not, as one of the intestate’s next of kin, entitled to a seventh part of the estate, there is no ground whatever for the title set up for him to the negro girl, Nelly, nor any reason why he should not pay the sum bid for her. But if the allegations of the bill upon that point had been formal and distinct, and it were admitted that Asa Edney was, as one of the next of kin, entitled to one seventh part of the estate of the intestate, yet the plaintiffs can have no relief on this bill, because it in no manner appears upon it, either by particular or even general allegations, that he did not receive his seventh part, over and above the amount of the bond given for the price of Nelly. It is admitted that he got George (of the value as stated in the answer of $1200) and that he paid $180 to some persons claiming to be of the next of kin, which left $1020 in his hands ; and there is no allegation that a full share amounted to more than that sum. Indeed there is no statement of the particulars or value of the estate, nor, contequently, of the amount of a distributive share. It is said, indeed, that the two negroes, George and Nelly,
 
 *474
 
 exceeded a seventh part by the sum of $180, but no value is set upon Nelly, and therefore the whole matter is still left in obscurity. If, however, It be taken as an Inference from the statements of the bill, that George and Nelly, after deducting $180 from their value, were equal to a share of one seventh, and that Nelly was estimated in the division at the sum of $362, for which she was after-wards sold; still the matter of the bill is too defective to authorize any decree for the plaintiffs. For the share of Edney, for which he received those negroes, was calculated according to the estimate of the estate, as made by the parties to that division. Now it is plain that objections were raised to that by the other persons interested, either because the estate was erroneously estimated, or bceause the division ought to have been made as upon an intestacy, whereas it was made upon the footing of a will, or for some other reason ; and that a controversy existed in the family as to the proper principle of division, in consequence of which an administration was taken on the estate, that it might be distributed according to the due course of law. Under that administration
 
 Nelly
 
 was sold and purchased by Asa Edney ; and the administrator was about to bring suits, for other property not delivered to him by the several next of kin, including, no doubt, the negro George, which Edney had converted. Under these circumstances, the bill states, that, when Edney gave his bond, the administrator agreed, that, if the previous division was valid or should ever be rendered so by the general consent of the next of kin or otherwise, then the bond for the price of Nelly should be can-celled. If this agreement be relied on as the ground of relief, it behooves the plaintiff to shew, either that the division was in truth according to the rights of all the next of kin; or that it was subsequently confirmed or made valid by an agreement of the next of kin, or in some other manner. To shew the first no attempt is made, and we are at much loss to determine whether
 
 *475
 
 •the bill meant to charge the latter. It states, that the administrator and the next of kin — called in the bill “heirs and distributees” — agreed to refer “ the whole matter” to two arbitrators-. What the “whole matter,” thus submitted, was, we are not told, but are left to conjecture. Certainly, however, that reference cannot be construed into “ a general consent” of the next of kin “"to render the previous division valid
 
 ■”
 
 because, if the reference related to this estate at all, it must have involved a settlement of the administrator’s accounts, and the- proper distribution of the estate among the next of kin. Therefore the plaintiff’s rights., if an award was made, must depend upon the award in his favor. In other words, when he calls upon the administrator to deliver' hi-s bond or discharge him from the payment of it, he must shew, as the ground of that relief and upon the agreement, which the bill states to have been made when the bond was given, that the arbitrators awarded expressly,:that the administrator should deliver up the bond, or, at the least, that they confirmed the division which had been made, or awarded'that Nelly belonged to Asa Edney, and that, by mistake, he bought his own property. Now the bill states, not an award to that effect; and, indeed, although it says “ an award was made and confirmed, and that it was a final settlement of the estate,” no part of its contents is set forth in the bill, as awarding any thing to the. plaintiffs touching the subject of this suit. On the contrary it rather complains of the award, because, in making it, the arbitrator’s did not allow Edney a credit for the $382, and also (as we suppose the bill to have meant) because they did not allow him a credit for the $1.80.. The bill, therefore, instead of setting up.a title under the award, rather impeaches it by insinuation. But as a bilL to impeach an award, it is entirely defectiye; for/ it neither states the award, nor any particular error therein, nor any fraud in the arbitrators, nor mistake by them, either as to matter, of law or fapt — n.ot even alleging, that
 
 *476
 
 these claims were set before the arbitrators, or made known to them, nor assigning any reason, why they were not. Upon the face of the bill, therefore, the
 
 plaintiffs
 
 have no case for relief. But, if the bill had properly charged the matter, which, perhaps, the party wished to set forth, the merits of even that case are completely disposed of in the answers. The administrator positively denies, that there was any condition or agreement, that the bond should be surrendered in any event; and, moreover, he states, that the arbitrators did take into consideration the $180, which Edney paid, and also charged the administrator with Edney’s bond for $362, and it was a part of the fund in his hands, which he was required by the award to distribute among the other next of kin.
 

 So, in every point of view, the dissolution of the injunction with costs was right; and we can only express our regret, that costs had not been given immediately to the sheriff and clerk. Those persons were most improperly made defendants, as they arc merely ministers of the law, and have no interest whatever in the controversy. Upon notice of the injunction it would, it is true, have been a contempt in the sheriff to proceed on the execution ; but to that purpose notice would have been sufficient, and it was very wrong to serve a subpoena on them and put them to the expense of appearing in the cause, and putting in answers as defendants.
 

 The interlocutory decree is affirmed with costs in this Court, and this must bo certified to the Court of Equity of Henderson County.
 

 Per Curiam.
 

 Ordered accordingly.